Good morning, may it please the Court. I'm Linda Ziskin. I'm the attorney for Plaintiff Appellant Shane Costa. As a threshold matter, I would like to, there's two things I just need to tell you quickly. One is that I made a mistake in the opening brief. I stated that this case was remanded for payment of benefits. It was not. I did get a reversal and a remand for further proceedings, so I apologize for that error. Secondly, I have come across two cases which were not in my briefing. And I would like to submit a 28-J letter to you after the argument. These cases are Moreno v. the City of Sacramento, which was your case, a Ninth Circuit case, and then Astro v. Ratliff, which is a Supreme Court case, and I'll be referring to the concurrence by Justice Sotomayor. This case is not about me. No, you need to fill out one of these gum sheets, we call them. A gum sheet? What? I'll be happy to do that. You put the citation. Yeah. The clerk will give you the gum sheets. Okay. I'll take care of that. No extra charge. Okay. This case is not about me or this $3,000 that's in dispute. But it is about a lot of attorneys who are just like me. At Legal Aid, we used to call this an impact case. It affects a lot of people. And what I'm going to be referring to a lot is the Equal Access to Justice Act, and we fondly abbreviate it as EJA. But again, it's called the Equal Access to Justice Act, and that's critical. And this is what Justice Sotomayor is talking about in her concurrence in Ratliff v. Astro, which was a case where fees were deducted from the attorney's fees when a claimant owes some debt to the government. That didn't happen here. Here we had a magistrate judge in the district court arguably arbitrarily cutting my fee by over 50 percent. It's actually Mr. Costa's money because if he wins benefits, it comes out of his pocket. Right now, it's coming out of the government's pocket under the EJA. There's two kinds of cuts that were made, and I really, really only want to talk about one kind with you today, and it's what I stressed in my briefing. There are all the cuts that Judge Hubel, the magistrate, made that are like one-tenth of an hour. That's six minutes. He made a bunch of those in the time records that Mr. Drew Johnson, who is my co-counsel, submitted. I'm not going to talk about those. I am not going to defend those, but I'm also not going to concede that those were improper. But I don't want to waste your time, and we've only got 10 minutes. It's so important to talk about the other cuts, the cuts to the briefing. In Moreno v. City of Sacramento, a very entertaining opinion by Judge Kaczynski, which really elucidates what's going on here. We have a very loose standard. There's a tremendous amount of discretion that's afforded the trial court judge, or in this case, the district judge who's acting as an appellate reviewer. Just a vague standard, we look at abusive discretion. What does that mean? No one has ever quantified this. There are many cases out there that talk about abusive discretion in terms of the substantial justification standard, but this is the other standard, the other part of EJIA that we're talking about, which is reasonableness, reasonableness of my time, of my hours. Well, is counsel's focus on the de facto rule of the Court concerning the amount of fees that the Court would think reasonable or appropriate based on the type of case? Is that the focus of your argument? You know, I'm not going to focus on that, because that was one little tiny case by Judge Mossman with facts that are highly different than this case, and he said in that case, which is Hardin v. Astru, that 20 to 40 hours ought to be enough. Well, my hours were 41.1, okay? And I'm not outside the realm of reasonableness at all in my time. I did a good job. I've been doing this for a while. I don't wish to be a judge. I don't waste time. I don't pad my briefs. I don't pad my hours. You know, there's no reason to think otherwise. All the judges in the District of Oregon are pretty accepting of the hours that we turn in. This is the first time I've really had this problem. And what I'm complaining about is I believe that Judge Hubel went a little too far. If you read Moreno v. City of Sacramento, Judge Kuczynski very helpfully created a standard for us. He said, okay, pursuant to Hensley, Hensley v. Eckerhart, big case that I referred to in my briefing, if a judge is going to cut your fees, he has to do so clearly and concisely. He's got to say why. He has to spell it out. He has to give you something to review. He can't just do an across-the-board percentage cut. He did cut me over 50 percent. He didn't say why. He did say why with all the other little cuts. I'm not talking about those. I'm talking about my cuts, and I'll give you the reasons that he provided. But what Judge Kuczynski did is he said, okay, 10 percent. Let's say he can cut you 10 percent without giving more than a cursory reason. That's like a haircut. That's exactly what he said. Anything more than that, he's got to give the clear and concise reasons required by Hensley. In my case, it was an amputation, not a haircut. And that's why I'm here. Not, again, for me, but for all the other attorneys who are going to be deterred from taking these cases, as Justice Sotomayor very articulately explained, the whole purpose of EJIA, equal access, to allow indigent claimants to bring cases before the government. These cases are about dysfunctional people who can't advocate for themselves. It's about disabled people, okay? And we're their last hope in a lot of respects, and the EJIA makes it possible for myself and for all the other attorneys who do this kind of work to make a living. And as Justice Kuczynski said, lawyers have to eat. And I eat pretty well, but I still need to make a living. And, again, it's not about just me, but it is partly about me, because there's a chilling effect that's going on here. And if the attorneys like me are chilled from doing this good work, this practice of law that helps people, it subverts the entire legislative intent of the Equal Access to Justice Act. That's why I'm here. This is a big issue. I'm not talking about the tenths of a percent of Attorney Johnson downloading a document and taking too long to do it. We're not here about that. I don't want you to be distracted by that. Please focus on the Equal Access to Justice Act, what it's about, and what a cut in attorney's fees means to the sole practitioners and small firm attorneys like myself who do this kind of work. I welcome questions, and if not, I'd like to reserve my time for a rebuttal. JUSTICE GINSBURG Just one question. So is it your request that the Court reverse and remand to the district court to state reasons as to why the district court thinks it's appropriate to reduce the fees, or are you making some other request? MS. GINSBURG Yeah, that would be one remedy, but I think it would be better if this court would stand with Judge Kaczynski and Moreno v. City of Sacramento and tell Judge Hubel that was too much, next time you have to give reasons, I would be fine with a 10 percent request. Had the government asked, I would have done that. Had we gone into mediation, we – I, you know, I was willing. Nobody asked. Ten percent is okay, according to Judge Kaczynski. I agree. That's not going to deter attorneys from taking these risky cases that are 100 percent contingent, and we need attorneys to be doing this kind of work. Thank you. Well, I don't even know why it ought to be a 10 percent haircut. I'm sorry. I didn't hear you, Judge. I don't know why there should even be a 10 percent haircut. Well, of course, I agree with that, but, yeah, I mean, I did a good job. I had a good outcome, and that's one of the factors to look for. And I am an experienced Social Security disability attorney, another factor to look for. There's no reason to cut me. If Judge Hubel had cut me or if he had cut on the other side of the little 10 percent or little tenth-of-an-hour cuts, that's different. Now we're getting into this abuse of discretion area and this deference area. And I'll tell you, when you're dealing with the AJA, because of this import of this Act, you better be careful. You can't cut too much without really cutting into the flesh and bone of what this is all about. And he did. And that's why I'm here. Thank you. Good morning, Your Honors. I'm Catherine Miller on behalf of the Commissioner of Social Security. The overarching issue in this case is whether the District Court properly exercised its discretion when it reduced the number of hours expended by counsel in this case. No one disputes that counsel was entitled to an attorney fee under the AJA statute. The issue is whether the fee requested was reasonable. It seems to me here, counsel, that the hourly rate was very modest. Usually in these cases we're fighting about whether it's an hourly rate which is unreasonable. But here's a competent attorney who, if you look at those time records, looked as though the expenditures were completely appropriate as to time. Well, Your Honor, the hourly rate is, of course, set by statute in the AJA case. If an individual is exceedingly competent and is able to accomplish the tasks in lesser hours, we're very inclined to allow an increase in the hourly rate. We're not stuck with the statutory allowance. And here, there's no dispute but that this rate was exceedingly modest, and absolutely no reason, it seems to me, to say that these kinds of cases ought to be able to be handled within X number of hours. I think that's quite inappropriate. Well, it's entirely appropriate for the District Court, who presided over the merits of the case and was very familiar with the briefing and the issues raised, and this is true for Social Security cases in the entire nation. He sees these cases all of the time. This kind of minutia is inherent in the fee review process. The Court provided clear and concise reasons also for reducing the time expenditure. And, of course, the Court has no control, really, over the hourly rate, just the time of reviewing fee requests. So really, that's what you're looking at. And this is why the Court, at the outset of its decision, referenced the 20-to-40-hour framework, because Social Security cases don't really change over time. They are hard cases. I agree with you. Let me tell you, though. And that's why. They're hard cases. It's in the history. I spend a lot of time on those cases. Now, if you don't care about people, it's easy to uphold the Social Security people, you know, because of some of the standards. Yeah, there's plenty of substantial evidence. Fine. But you've got to comb through records. You've got to work hard. Absolutely. It's not easy. Not too many lawyers want to take these cases. I do. And this young lady here is an excellent lawyer, an excellent lawyer, one of the best I've seen all week. Well, Your Honor. And if she really wanted to make money at this, she'd be billing herself out at $500 an hour, you know. Give one of these cases to one of the big law firms and see what kind of a bill they come up with, you know. I mean, you've got to be reasonable about this. These are not easy cases. I spend more time on these cases than I do on a lot of other cases. Is it counsel's? Through everything. Excuse me. Judge Breyer. And I was just going to ask, is it your position that the district court gave reasons other than the de facto rule for the district? Yes. Yes, the court, first in looking at the opening memorandum, noticed that it was only 17 pages long. Yes, but that's, you know, 17 pages. That's a perfect — that's a perfect size of a brief. You know, the others go out and make them 50 pages, and they want. So why do we make them 50 pages? Well, we can't charge as much money for a 15-page brief as for a 50-page brief, you know. I'm sure the court prefers a shorter brief. Shorter brief. Yes. A lot harder work. And so you can't do it by the page or by the word. It's by, you know, the end product that counts. You know, a careful counsel who combs these records and looks at all of the medical evidence, it takes time. I agree. A careful exegesis of the record is required in Social Security cases. They are so fact-specific. Yes. It's important to keep in mind the court did not reduce counsel's hours spent reviewing the transcript. It was only in the drafting of the briefing. So the 5 hours she spent carefully reviewing the record were not cut at all. It was the 25 hours just for writing an opening brief that had only four very standard issues. There were only six pages of argument, lots of boilerplate. In the supplemental memorandum, six pages long, one-half a page of argument, counsel also billed .2 hours for reviewing two sentences. Now, there is some minutiae in this, but that is, again, inherent in the fee review process. And I'd just like to point out that the EJIA, no one disputes again that counsel is entitled to a fee. She's the prevailing party. But the definition of the phrase, fees and other expenses, under the EJIA statute, under 2412D2A says reasonable attorney fees. The statute contemplates that the district court plays an active role in reviewing fee requests. They don't just rubber stamp. I know you see huge fee awards all of the time in front of you. I'm a Social Security practitioner. We also see typical fee awards. $10,000 and over 40 hours is quite a bit. I don't see huge fee awards. Where do I see those? Well, I'm just, for example, the city of Moreno. We don't see all the big fee awards. I'm saying that they're bigger than Social Security cases. Because, you know, the big corporations, they just pay those checks. Well, for instance. Probably on the golf course, you know. And so I haven't looked at any huge fee awards. I've given good fee awards, millions of dollars, to lawyers who did a very, very good job. And through their work, solved very difficult problems. Their work resulted in, I'm talking about reorganization matters, their work resulted in the creation of a huge amount of wealth. So they're entitled to get a good fee. Apparently here, the court said there's a, following Judge Mossman, says these cases should be 20 to 40 hours and not any more. And that seemed to be the reason for the reduction in the fee when you get to the bottom line. And I don't think that's appropriate. Do you? I do, Your Honor. And first of all, the court considered the 20 to 40 hours as a framework. The court did not hold the line at 40 hours. They went to 41 and a half. The court did go to 41. But the court also said that absent unusual or complex circumstances or novel circumstances, the typical case, and the court used the word framework. Now, I did not thoroughly review the case. The City of Moreno, I'm somewhat familiar with it. There, Judge Kaczynski said something like, you cannot hold the line at a certain rate. There, the court cut hours by 50% simply because they were offended by the amount of fees that were awarded. Also, in Moreno, if I remember correctly, the court speculated about what other firms would have done or how they would have staffed the case. That's different than an empirically-based framework that is based on district court experience. And remember, the district courts are the people who handle these cases day in and day out. And in fact, one of the cases, the judge surveyed Social Security cases for seven years and found that 33.75 hours was typical. Again, the Court's reductions in this case were not arbitrary or without a rationale. The Court issued a nine-page AJA order. In addition to the framework, the Court, who is in the best position to remember everything that happened in this case because the Court presided over the case, the Court considered the merits and was able to assess the reasonableness. The Court made a considered judgment in view of the nature of the case, the details of the request, its own experience, the experience of other courts, and defended its decision adequately in clear and concise manner as to what the hours should be. The abuse of discretion standard is very deferential. The district court in this case based its decision on tenable grounds, provided tenable reasons. There was no abuse of discretion. This Court should affirm. Do you have any further questions? I'd be happy to answer them. Otherwise, I will. Thank you. Thank you. But don't kill a dead duck twice. No. I just actually wanted to quit while I'm ahead. Judge Fletcher, you actually made a comment that I want to address. The AJA rate is set by statute, and it's up to about $180 an hour now. That's not a real lot for most lawyers. When you choose to do Social Security work, you're taking a bit of a cut. I could be doing intellectual property work, as I used to do. Judge Gregerson, I could be making $500 an hour. But I've chosen to do this kind of work. I started out at legal aid, as I said, and this is what I want to do. I sleep well at night doing this kind of work. I didn't sleep well last night, but usually I do. And it's important to me to continue this kind of work. I'm concerned about the chilling effect, and I have to tell you I'm chilled. I'm considering doing something else because of this. I'm losing. And again, it's not just about me. I keep referring to me, and I shouldn't do that. There's many, many attorneys at my position. We're losing money, and we can't keep doing this. I just want that abuse of discretion standard to be quantified a little bit. And the 10 percent by Judge Kaczynski sounds okay. I think we could live with that. Again, I would prefer a different remedy. I would prefer to have my whole fee because I worked hard for it. But I'll leave that up to your judgment. Reward in the next world, I guess. Yeah. My karma. I know. It's not enough. Thank you, Judge. Well, that's the problem. See, we don't – the law profession doesn't reward people with a social conscience and a good heart that want to do things to help people who really need help and who can't afford to pay the big hourly rates that so many folks out there think they're entitled to. But, you know, I think the focus of the whole legal profession is in many ways distorted. Okay. Think about that. Go out and do justice.
judges: Marshall, Fletcher, Pregerson